**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, and STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation,<br><br>Plaintiff(s),<br><br>v.<br><br>HOSPITAL CAPITAL PARTNERS, LLC, an Arizona limited liability company, and ILLINOIS INJURY SOLUTIONS, LLC, an Arizona limited liability company,<br><br>Defendant(s). | Case Number: 23-cv-835 |

**COMPLAINT**

Plaintiffs, State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire") (collectively, the "State Farm Plaintiffs"), bring this Complaint against Hospital Capital Partners, LLC ("Hospital Capital Partners") and Illinois Injury Solutions, LLC ("Illinois Injury Solutions") (collectively, "Defendants"), and allege as follows:

**I.      NATURE OF THE ACTION**

1.      The State Farm Plaintiffs seek a declaration from this Court regarding whether certain non-assignable medical bills submitted to the State Farm Plaintiffs as part of insurance claims are properly due and payable.

2.      This action involves, on the one hand, Defendants, which appear to purchase certain

patient account receivables from certain Illinois health care providers among others. On the other hand, the State Farm Plaintiffs are property and casualty insurance companies that evaluate and pay claims for medical reimbursements related to automobile accidents and review medical bills and records as part of that process pursuant to the policies of insurance they issued.

3. The State Farm Plaintiffs became aware of Defendants and their apparent role in purchasing accounts receivable as part of the claims process. Despite the fact that health care liens are non-assignable as a matter of Illinois law, Defendants frequently submitted Notices of Lien for Medical Services ("Lien Letters") to the State Farm Plaintiffs on behalf of health care providers which disclosed Defendants' interest in the accounts receivable generated from medical services purportedly rendered to a patient. *See, e.g.*, **Exhibit A**.

4. Thereafter, Defendants often submitted Medical Provider's Directive Letters and accompanying instructive notices ("Directive Letters") to the State Farm Plaintiffs mandating that payment for liens must be made directly to Defendants. For example:

> "You are authorized to make payment with respect to this lien/these accounts receivables to Illinois Injury Solutions, LLC, provided that such payment is remitted by check made payable to Illinois Injury Solutions, LLC for the above amount…IF PAYMENT IS NOT MADE TO ILLINOIS INJURY SOLUTIONS, THE ACCOUNT WILL NOT BE CONSIDERED SATISFIED."

*See, e.g.*, **Exhibit B**. (emphasis in original).

5. As part of their assessment of whether the medical bills submitted by Defendants are properly payable, the State Farm Plaintiffs discovered that Defendants filed UCC-1 Financing Statements[1] with the Illinois Secretary of State reflecting a secured interest in:

> "All of the [health care provider's] rights, title, and interest in patient account receivables together with all statutory and/or contractual liens, letters of protection

---

[1] UCC-1 Financing Statements are filed to perfect a creditor's security interest and must contain the name of the debtor, the name of the secured party or representative of the secured party, and a description of the covered collateral. *See* 810 Ill. Stat. § 5/9-502.

> related to or associated with such account receivables that have been sold, assigned or otherwise transferred or conveyed pursuant to any agreement . . . between [the health care provider and Defendants]."

*See, e.g.*, **Exhibit C**. The exemplar collateral description appears consistent across Defendants' UCC-1 Financing Statements filed in Illinois for Defendants' respective health care provider debtors.

6. Defendants' communications to the State Farm Plaintiffs and public disclosures create confusion when viewed through the lens of Illinois law. Under the Illinois Health Care Services Lien Act (hereinafter the "Lien Act"), Illinois law vests only health care providers with a right to a lien on the outcome of a personal injury plaintiff's claim or cause of action. *See* 770 Ill. Stat. § 23/1 *et seq*. The Lien Act specifically provides that "[p]ayments under the liens shall be made directly to the health care professionals and health care providers." 770 Ill. Stat. § 23/10(e).

7. Because only these specific parties are entitled to payment under the statute, both trial courts and appellate courts of this State have concluded that health care liens are treated as extinguished upon assignment. *See, e.g., Constantinou v. Glob. Fin. Credit, LLC*, 2021 IL App (1st) 192325, 190 N.E.3d 859 (1st Dist. 2021); *Wilson v. F.B. McAfoos & Co.*, 344 Ill. App. 3d 452, 800 N.E.2d 177 (5th Dist. 2003).

8. Upon purchasing accounts receivable from Illinois health care providers and taking assignment of the corresponding right to collect on those providers' medical bills via the statutorily created lien, Defendants lack the right to receive payment on such liens. Nevertheless, Defendants continue to demand payment for health care liens under the auspice that Defendants merely manage and service the liens rather than having taken assignment. As a result, the State Farm Plaintiffs' payment obligations on the health care liens submitted, or caused to be submitted, by Defendants remain unclear.

9. Based upon Defendants' conduct, the State Farm Plaintiffs bring a claim pursuant

to 28 U.S.C. § 2201, seeking a declaration whether charges submitted, or caused to be submitted, to the State Farm Plaintiffs for which the right to collect has been sold or otherwise transferred to Defendants are properly compensable under the Lien Act.

## II. JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1332(a)(1), this Court has subject matter jurisdiction over the asserted claim because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between citizens of different states.

11. Pursuant to 28 U.S.C. § 1391, venue is proper in this district because a substantial part of the events or omissions giving rise to the State Farm Plaintiffs' claims occurred in this judicial district, and Defendants do business in this judicial district.

## III. THE PARTIES

### A. PLAINTIFFS

12. State Farm Mutual is a citizen of the State of Illinois. It is incorporated under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois.

13. State Farm Fire is a citizen of the State of Illinois. It is incorporated under the laws of the State of Illinois with its principal place of business in Bloomington, Illinois.

### B. DEFENDANTS

#### i. HOSPITAL CAPITAL PARTNERS, LLC

14. Defendant Hospital Capital Partners is an active Arizona limited liability company, formed on November 14, 2018, with its principal place of business located at 1347 North Alma School Road, Suite 150, Chandler, Arizona 85224. On November 27, 2018, Hospital Capital Partners registered to do business in the State of Illinois as a foreign limited liability company. Hospital Capital Partners is member managed by layperson David Wattel, a citizen of the State of

Arizona, and its other members include LawFinance Limited, an Australian publicly traded company, and National Health Finance DM, LLC ("NHF"), an Arizona limited liability company. Upon information and belief, none of the members of NHF are citizens of the State of Illinois. [2] Thus, Hospital Capital Partners is a citizen of the State of Arizona and Australia.

### ii. ILLINOIS INJURY SOLUTIONS, LLC

15. Defendant Illinois Injury Solutions is an active Arizona limited liability company, formed on March 28, 2018, with its principal place of business located at 1347 North Alma School Road, Suite 150, Chandler, Arizona 85224. On May 9, 2018, Illinois Injury Solutions registered to do business in the State of Illinois as a foreign limited liability company. Illinois Injury Solutions is member managed by layperson David Wattel, a citizen of the State of Arizona, and its other members include LawFinance Limited, an Australian publicly traded company, and NHF, an Arizona limited liability company. Upon information and belief, none of the members of NHF are citizens of the State of Illinois. [3] Thus, Illinois Injury Solutions is a citizen of the State of Arizona and Australia.

## IV. RELEVANT BACKGROUND

### A. THE STATE FARM PLAINTIFFS' 9813B POLICY

16. The State Farm Plaintiffs' policy 9813B ("Policy") mandates the State Farm Plaintiffs and their insureds are only contractually obligated to pay "damages an insured becomes *legally* liable to pay because of: (a) bodily injury to others . . ." *See* State Farm Car Policy 9813B, at 6 (emphasis added). This Policy was in effect during the relevant time period.

---

[2] To the extent Defendants contest the allegations in this paragraph or the citizenship of Hospital Capital Partners, the State Farm Plaintiffs request the ability to conduct jurisdictional discovery.
[3] To the extent Defendants contest the allegations in this paragraph or the citizenship of Illinois Injury Solutions, the State Farm Plaintiffs request the ability to conduct jurisdictional discovery.

17. Similarly, with respect to coverage for uninsured motorist ("UM") and/or underinsured motorist ("UIM") claims, the Policy mandates the State Farm Plaintiffs are only contractually obligated to pay "compensatory damages for bodily injury an insured is *legally* entitled to recover . . ." *Id.* at 14, 23 (emphasis added).

18. Accordingly, the State Farm Plaintiffs are bound by their Policy to only pay for claims that are legally owed.

19. Insofar as Defendants submitted, or caused to be submitted, health care liens that are non-compensable under Illinois law, there is no coverage and neither the State Farm Plaintiffs nor their insureds are obligated to pay those liens.

    **B.**    **THE STATE FARM PLAINTIFFS PROCESS CLAIMS**

20. As property and casualty insurers, the State Farm Plaintiffs receive, review, and adjust claims to appropriately pay insurance benefits.

21. The State Farm Plaintiffs' representatives review the medical records, billing, and supporting documentation submitted for a particular claim to determine whether amounts are payable under applicable law and pursuant to the Policy provisions and limits.

22. The State Farm Plaintiffs' claims representatives rely on representations in the medical records and billing that the services and treatment are properly compensable.

23. With respect to bodily injury, UM, and UIM claims, the State Farm Plaintiffs' representatives evaluate settlement demands oftentimes received from a patient's attorney along with the medical records, billing, and other documentation supplied to properly adjust the patient's claim.

    **C.**    **MEDICAL RECEIVABLE FINANCING**

24. Medical receivable funding is a financing method whereby a company purchases a

health care provider's right to bill and receive payment for treatment rendered to patients.

25. This method of financing is frequently employed in the personal injury context because patients injured in accidents obtain treatment months and sometimes years before their personal injury claim is resolved. Health care providers rendering treatment to these types of patients therefore receive significantly delayed payment for services rendered.

26. To obtain security in their right to collect payment from a patient's personal injury claim, health care providers will often require that patients sign what is known as a letter of protection. In Illinois, health care providers obtain a health care lien, which will similarly secure a right to collection from a patient's claim.

27. Even with a lien or a letter of protection to secure a provider's ability to ultimately collect payment, the delay between when the services are rendered and when payment is received can often create operational challenges for health care providers.

28. Medical receivable financing companies are born from the operational challenges health care providers face in treating personal injury patients.

29. Generally speaking, medical receivable financing companies purchase accounts receivable from health care providers usually at a negotiated discount of the face amount of the bill generated by the health care provider. Medical receivable financing companies generally offer to purchase a receivable within thirty (30) days of submission of a medical bill. These terms are often memorialized in agreements between the health care providers and the medical receivable financing company, negotiated in advance of any treatment performed.

30. In the personal injury context, the medical bills associated with the purchased accounts receivable are submitted to property and casualty insurance companies, among other insurers, where they are evaluated, generally based on the value stated on the face of the bill. This

process presents the possibility of a considerable return on the investment made by the medical receivable financing company by purchasing the receivable at a discount.

31. Health care providers are motivated to offer a discount in selling their accounts receivable because medical receivable financing companies offer prompt payment rather than the extended delays health care providers normally encounter in treating personal injury patients. The discounted amount paid by the medical receivable financing company is taken from the "rack rate" of the health care provider's charges, which is infrequently charged or collected, which leads to a potential increase in revenue for the health care provider selling their receivables.

32. While certain arrangements for the purchase of medical receivables may be legitimate and lawful, the benefits to health care providers in selling their receivables, and to medical receivable financing companies in purchasing those receivables, can create perverse incentives. The medical receivable financing company can receive significant returns on their purchase of the account receivable via a successful settlement or litigation of the claim. Similarly, health care providers can treat more personal injury patients, increasing both patient volume and profits, with the promise of guaranteed payment by the medical receivable financing company. As a result, these types of arrangements can, in certain circumstances, incentivize unlawful behavior, such as engaging in patient brokering or the ordering of medically unnecessary treatment, to maximize profits for the medical receivable company at the expense of providing legitimate health care to patients.

33. On information and belief, both Defendants appear to operate as medical receivable financing companies.

D. **HEALTH CARE LIENS ARE EXTINGUISHED UPON ASSIGNMENT**

34. Under the Lien Act:

> [e]very health care professional and health care provider that renders any service in the treatment, care, or maintenance of an injured person shall have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges up to the date of payment of damages to the injured person….

770 Ill. Stat. § 23/10(a).

35. Accordingly, Illinois law vests health care professionals and health care providers with the right to a lien on the outcome of a personal injury plaintiff's claim or cause of action.

36. However, the Lien Act provides that "[p]ayments under the liens shall be made ***directly to the health care professionals and health care providers***." *Id.* § 23/10(e) (emphasis added).

37. Thus, the Illinois Legislature specifically limits the right to collect payments for these liens to health care professionals and providers.

38. Illinois courts have confirmed that if the health care provider indeed assigned its liens to the billing company as part of sale of accounts receivable, those liens were ***extinguished*** because the underlying debt had been paid. *Constantinou v. Glob. Fin. Credit, LLC*, 2021 IL App (1st) 192325, 190 N.E.3d 859 (1st Dist. 2021); *Wilson v. F.B. McAfoos & Co.* 344 Ill. App. 3d 452, 800 N.E.2d 177 (5th Dist. 2003).

**V. DEFENDANTS' CONDUCT HAS CREATED UNCERTAINTY REGARDING THE STATE FARM PLAINTIFFS' PAYMENT OBLIGATIONS**

39. As a result of Defendants' conduct detailed further herein, the State Farm Plaintiffs lack clarity regarding their payment obligations for the claims submitted, or caused to be submitted, by Defendants, arising from services performed by Illinois health care providers to patients with bodily injury, UM, and/or UIM claims.

40. The State Farm Plaintiffs' uncertainty arises from Defendants' contradictory

representations regarding whether Defendants purchased accounts receivable from Illinois health care providers thereby taking assignment of the corresponding right to collect on those providers' medical bills via the statutory health care liens or whether Defendants simply manage the accounts without having taken assignment.

41. Defendants frequently submit Lien Letters to the State Farm Plaintiffs on behalf of the health care provider. In the Lien Letters, Defendants disclose to the State Farm Plaintiffs that they maintain an interest in accounts receivable generated from services currently or previously rendered to the patient. *See, e.g,* Composite **Exhibit D**.

42. To ultimately collect on the accounts receivable in which they maintain a security interest, Defendants, in some instances, submit Directive Letters to the State Farm Plaintiffs that mandate all payments must be made directly to Defendants. Specifically, Defendants demand that:

- "ALL COMMUNICATIONS, NEGOTIATIONS, QUESTIONS, AND PAYMENTS MUST BE ACCEPTED AND DELIVERED TO OUR OFFICE.

- PRIOR TO SETTLEMENT, PLEASE CONFIRM WITH [DEFENDANT] THAT THE CLIENT DID NOT RECEIVE ANY ADDITIONAL CARE **THAT WAS FUNDED BY AND THROUGH [DEFENDANT]**.

- You are authorized to make any payment with respect to this lien/these accounts receivables to [Defendant], provided that such payment is remitted by check made payable to [Defendant] for the above amount. At the time of settlement, if any lien reduction requests are necessary to settle the case, all lien reduction requests **should come directly through this office, NOT the providers directly**. Any balance requests should be made directly through this office, NOT the providers directly.

- IF PAYMENT IS NOT MADE TO [DEFENDANT], THE ACCOUNT WILL NOT BE CONSIDERED SATISFIED.

- [Only Defendant is] authorized to discuss and resolve the provider's lien. Any confirmation, reduction, or notice of satisfaction of any account provided by anyone other than [Defendant] is not accurate or enforceable and will not be honored, including any such confirmation, reduction, or notice of satisfaction from the above listed provider(s).

*See, e.g,* Composite **Exhibit E** (emphasis added in some).

43. Defendants' communications with the State Farm Plaintiffs further suggest that Defendants purchased or were otherwise assigned the accounts receivable and corresponding health care liens. For example, according to the Directive Letters, the State Farm Plaintiffs are only allowed to contact Defendants, are only allowed to negotiate payments with Defendants, and are only allowed to send payments to Defendants. Moreover, Defendants demand that any payment not issued to them will result in an unsatisfied account. Accordingly, Defendants appear to exert indicia of ownership over the accounts and corresponding health care liens.

44. Based on these representations, the State Fam Plaintiffs are lead to believe that Defendants purchased accounts receivable from Illinois health care providers. As a result, Defendants should not be entitled to seek payment for the underlying health care liens from the State Farm Plaintiffs pursuant to the Lien Act.

45. To seek clarity on their payment obligations, the State Farm Plaintiffs sent letters to an Illinois health care provider requesting information on its relationship between Defendants and the suspected assignment of at-issue liens that had been submitted for payment by Defendants.

46. On June 28, 2022, counsel for Hospital Capital Partners responded to a letter sent by the State Farm Plaintiffs. *See* **Exhibit F**. Rather than receiving a response from the health care provider, the State Farm Plaintiffs received counsel's contention that Hospital Capital Partners "merely manages the account on behalf of the provider [and] does not take any assignment of health care liens, accounts or personal injury claims." *Id.*

47. The State Farm Plaintiffs required further investigation into Defendants' purported status as mere account managers because the communication with counsel created additional uncertainty on the State Farm Plaintiffs' payment obligations.

48. The State Farm Plaintiffs discovered that, beginning in September 2019,

Defendants filed UCC-1 Financing Statements with the Illinois Secretary of State to perfect their security interest in accounts receivable acquired from health care providers.[4]

49. Notably, the collateral in the UCC-1 Financing Statements is consistently described as:

> **All** of the Debtor's rights, title, and interest in **patient account receivables** together with all **statutory and/or contractual liens**, letters of protection related to or associated with **such account receivables that have been sold, assigned or otherwise transferred or conveyed pursuant to any agreement, contract or instrument** between or by debtor/seller and secured party/buyer, including but not limited to that certain Agreement or Contract between debtor/seller and secured party/buyer….

*See, e.g.,* **Exhibit C** (emphasis added).

50. As reflected in the collateral description, Defendants represent to the public that there has been a sale, assignment, transfer, or conveyance of the accounts receivable, including all statutory liens, to Defendants. Thus, Defendants publicly portray an acquisition of rights to the health care providers' liens.

51. Defendants' UCC-1 Financing Statements, Lien Letter, and Directive Letters are inconsistent with their purported status as account managers. Consequently, whether the State Farm Plaintiffs are required to pay charges for health care liens submitted, or caused to be submitted, by Defendants remains uncertain.

VI. **THE STATE FARM PLAINTIFFS REQUIRE A DECLARATION REGARDING WHETHER DEFENDANTS PURCHASED ACCOUNTS RECEIVABLE AND WHETHER THE LIENS ARE NON-COMPENSABLE**

52. Based on the foregoing, it appears Defendants purchased accounts receivable from more than a dozen Illinois health care providers and took assignment of the corresponding right to

---

[4] Defendants are presently listed as secured parties for more than a dozen health care providers in the State of Illinois.

collect on those providers' medical bills via the statutorily created lien. By purchasing the accounts receivable and taking assignment of the corresponding lien, Defendants would no longer be entitled to reimbursement from the State Farm Plaintiffs because the underlying debt is extinguished.

53. Defendants, on the one hand, convey to the public that the health care liens have been sold, assigned, transferred, or conveyed, while, on the other hand, represent to the State Farm Plaintiffs that Defendants merely manage the liens without taking assignment. The two inconsistent conclusions fail to provide the State Farm Plaintiffs with the required clarity to determine their corresponding payment obligations.

54. The State Farm Plaintiffs are bound by their Policy to only pay for claims that are legally owed. The purchase of accounts receivable and corresponding health care liens by Defendants where those liens are subsequently submitted to the State Farm Plaintiffs for payment would result in the State Farm Plaintiffs paying for claims that are deemed non-compensable under the Lien Act and are, thus, not legally owed.

55. Consequently, the State Farm Plaintiffs require a declaration from the Court declaring whether charges submitted to the State Farm Plaintiffs for which the right to collect has been sold or otherwise transferred to Defendants are properly non-compensable under the Lien Act.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### DECLARATORY JUDGMENT – 28 U.S.C. §§ 2201 AND 2202

56. The State Farm Plaintiffs incorporate, as if fully set forth herein, each and every allegation in paragraphs 1–55 above.

57. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

58. There is an actual case and controversy between the State Farm Plaintiffs, on the one hand, and Defendants, on the other hand. Defendants have submitted, or caused to be submitted, charges for Illinois health care services liens to the State Farm Plaintiffs that, pursuant to the Lien Act, should be non-compensable because Defendants purchased or were otherwise transferred accounts receivable from Illinois health care providers and took assignment of the corresponding health care liens. Consequently, any purchase of accounts receivable by Defendants extinguished the underlying debt within the health care liens, and the State Farm Plaintiffs would no longer be obligated to issue payments on the health care liens submitted, or caused to be submitted, by Defendants.

59. The State Farm Plaintiffs respectfully request a judgment declaring whether charges submitted to the State Farm Plaintiffs for which the right to collect has been sold or otherwise transferred to Defendants are properly non-compensable under the Lien Act such that the State Farm Plaintiffs can properly determine their payment obligations under applicable policies; and for supplementary relief, interests and costs that this Court deems equitable, just and proper.

Dated: February 10, 2023

By: */s/ Melissa Gold*
Melissa Gold
Illinois Bar Number: 6312904
**HOLLAND & KNIGHT LLP**
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
Telephone: (312) 263-3600
Facsimile: (312) 578-6666
E-mail: Melissa.Gold@hklaw.com

David I. Spector (*pro hac vice* pending)
Caitlin F. Saladrigas (*pro hac vice* pending)
777 South Flagler Drive, Suite 1900
West Palm Beach, FL 33401
Telephone: (561) 833-2000
Facsimile: (561) 650-8399
David.Spector@hklaw.com

Caitlin.Saladrigas@hklaw.com

Alexander M. Dudley (*pro hac vice* pending)
515 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33201
Telephone: (954) 525-1000
Facsimile: (954) 463-2030
Alexander.Dudley@hklaw.com

*Attorneys for State Farm Mutual and State Farm Fire*